## H. E. THIGPEN v. L. MAGET.

*Landlord and Tenant—Lien for Advancements—Lien for Sup-
plies—Priority of Landlord's Lien.*

In an action by a landlord for the value of rents and advancements
made to his tenant against the tenant's vendee of the crops, who
had also made supplies to him for cultivating them, it appeared
from the findings of the referee that the plaintiff advanced certain
cotton-seed, etc., to his tenant in 1884, and in 1885 and 1886
allowed his tenant to *retain* parts of the *undivided* cotton-seed
and crops by way of advancement: *Held,* (1) that plaintiff had a
landlord's lien on such seed and crops; (2) that it took priority
over defendant's supply lien; (3) that division of the crop and
delivery back to the tenant was not necessary to constitute a
valid advancement.

This was an action to recover a balance alleged to be due
to the plaintiff for rent and advancements to one James
Hardy, from whom, it is alleged, the defendants purchased
and received property subject to a statutory lien to secure
the payment of said rent and advances, heard, upon the
report of a referee and exceptions thereto, before *Womack, J.,*
at Spring Term, 1890, of the Superior Court of EDGECOMBE
County.

The plaintiff alleges in detail that James Hardy rented
land of her successively for the years 1884, 1885 and 1886,
upon the terms set out in the complaint, to make crops; that
he was indebted to her for a balance due on rent and for
supplies advanced in making crops on said land, and that,
without her knowledge or consent, he sold and delivered to
J. R. Thigpen & Co. cotton, corn and fodder, upon which
she had a statutory lien for the rent and advancements due
more than sufficient to discharge the same; that J. R. Thig-
pen is dead, and the defendant Maget is surviving partner
of J. R. Thigpen & Co., and, upon demand, refused to pay
said debt, and this action is brought to recover the same.

There was an answer denying the allegations of the complaint.

At Spring Term, 1887, by "consent of parties," the action was referred to John L. Bridgers, Esq., "under *The Code*." At October Term, 1889, the referee made his report of findings of fact and conclusions of law, as follows :

### FINDINGS OF FACT.

1. The plaintiff rented her Dupree farm to James Hardy for the year 1884 ; Hardy was to pay twenty-one bales of cotton, weighing 450 pounds each. Plaintiff advanced to Hardy, to enable him to make the crop of that year, corn and fodder to the value of $73.25. She also advanced to Hardy, for the same purpose, the cotton-seed from sixty-one packed bales of cotton; they were in plaintiff's gin-house when received by Hardy. The seed from sixty-one packed bales of cotton amounted to 1,886 bushels. When Hardy quitted the farm he was to return to the plaintiff the same quantity of seed, and, if he did not, he was to make up the difference in money.

2. That the said Hardy rented the farm on the same terms for the year 1885. Plaintiff, about the first of the year, spoke to Hardy about the cotton-seed, corn and fodder, which he owed her for the year 1884. He said that he had plenty of cotton-seed to pay them with; plaintiff replied, "You are going to take in some tenants and I only want my seed, the excess is yours; that if you divide seed with the tenants you will have to make up mine; that is, the amount you owe me." He said he needed the seed, and I advanced them to him on my terms, the same as before. When asked for the corn and fodder he said he had more than enough to pay it, but that he would need it in his crop. The plaintiff then told him that he could have it for the year 1885 ; neither the cotton-seed nor the fodder was separated from

the bulk of Hardy's seed and corn; it was on plaintiff's farm.

3. In the fall of 1885, Hardy came to the plaintiff and rented the farm on the same terms; plaintiff asked him how many cotton-seed he had on hand; said enough to pay you; then told him he could have them for the year 1886 as before. Some time in December, 1885, plaintiff told Hardy that she would send for the corn and fodder which he owed her; he said that he could not spare it; that dividing his crop among his tenants, he would need it, and could not get along without it, and wanted me to let him have it another year; I told him I would advance it to him as before. The cotton-seed and corn were on plaintiff's farm; there was no separation of the amounts which were going to the plaintiff from the bulk which belonged to Hardy.

4. In the year 1886, Hardy rented the farm on the same terms, and the same was shared with him by a party named Shelton; and it was also agreed that Hardy should have the ditches shrubbed off and cleaned out, and the plaintiff was to pay for cleaning out canal.

5 That Hardy paid all his rent for 1886 except 737 pounds lint cotton, which was worth $8\frac{1}{2}$ cents per pound.

6. That before the end of the year 1886 Hardy left the farm and his crop, and the plaintiff had a part of the same gathered—one lot of 486 pounds and another lot of 251 pounds; that the first lot sold for $36.86, and the second lot sold for $19.57. Plaintiff paid, on account of marketing same, the sum of $11.20, and the sum of $5.32 for hauling and ginning.

7. That the plaintiff advanced to Hardy, on account of his ditching, the sum of $28.20.

8 That Hardy returned to plaintiff 1,244 bushels of cotton-seed, leaving a difference of 644 bushels of seed, which Hardy owed to the plaintiff, or the value thereof. That the value of cotton-seed was $12\frac{1}{2}$ cents per bushel.

9. That said Hardy is indebted to the plaintiff in the sum of $204.88, as is shown by the following statement:

| | | | |
|---|---|---|---|
| 1886 | To 1,886 bushels cotton-seed, at 12½ cents per bushel | $235 | 70 |
| | Corn and fodder to the value of | 73 | 25 |
| | Advanced cash in summer for ditching | 28 | 20 |
| | Paid for picking, hauling and ginning part crop, | 16 | 52 |
| | 737 lbs. rent cotton due, at 8½ cents per lb | 62 | 64 |
| | CREDITS. | $416 | 31 |

| | | | | |
|---|---|---|---|---|
| By | 1,244 bushels cotton-seed, at 12½ cents per bushel | $155 00 | | |
| | 486 lbs. of cotton sold by plaintiff | 36 86 | | |
| | 250 lbs. of cotton sold by plaintiff | 19 59 | | |
| | | | 211 | 45 |
| | Balance due plaintiff January 1st, 1887 | | $204 | 86 |

10. That the defendant firm, J. R. Thigpen & Co., some time early in February, 1886, began to make advances to the said Hardy under an agricultural lien (it was admitted that the defendant had a lien), and did advance to him a large amount of supplies.

11. That the plaintiff made no agreement with the defendants, or either of them, not to make advancements to Hardy. That after the defendant took the lien and began to make advances to Hardy, the plaintiff made only one advancement to Hardy, which was $28.20 to have some ditching done.

12. That the defendants took and appropriated to their own use of the crops of corn and cotton grown and raised on the said farm by the said Hardy during the year 1886, an amount much larger in value than the sum in which the said Hardy was indebted to the plaintiff.

CONCLUSIONS OF LAW.

1. That plaintiff made advances to the said Hardy for the year 1886 of cotton-seed to the amount of 1,886 bushels, and of corn and fodder to the amount of $73.25.

2. That said Hardy is indebted to plaintiff in the sum of $28.20, advanced for ditching, and the sum of $16.52, money expended in housing the crop after Hardy left it.

3. That Hardy is indebted to plaintiff to the value of 737 pounds of lint cotton worth $8\frac{1}{2}$ cents per pound, balance for the year 1886 on rent.

4 That the defendant is liable to plaintiff for the indebtedness of said Hardy, amounting to $204 86, with interest from January 1st, 1887.

5. That plaintiff is entitled to judgment against defendants for $204.45, and interest from January 1st, 1887, and cost of this action.

At Fall Term, 1889, there was a judgment confirming the report, which, at Spring Term, 1890, by consent of all parties, was stricken out, and defendant filed exceptions, both to findings of fact and conclusions of law, as follows:

1. To conclusion of law one, for that he finds the plaintiff made advances to said Hardy for the year 1886 cottonseed to the amount of 1,886 bushels, and corn and fodder to the value of $73.25.

2. To conclusion of law three, for that he finds Hardy owes plaintiff 737 pounds of lint cotton worth $8\frac{1}{2}$ cents per pound, rent for the year 1886.

· 3. To conclusion of law four, for that he finds the defendant liable to plaintiff for the indebtedness of said Hardy, amounting to $204.43, with interest from January 1st, 1887.

4. To conclusion of law five, for that he finds plaintiff entitled to judgment against defendants for said sum of $204.43, with interest on same from January 1st, 1887, and cost of this action.

The Court rendered judgment sustaining specifications two and three of exception one, to finding of fact, and overruled all other exceptions of defendant, both of law and fact, and gave judgment against the defendant for the sum

of $192.75, with interest. From this judgment defendant appeals to the Supreme Court.

No counsel for plaintiff.
*Mr. G. M. T. Fountain* (by brief), for defendant.

DAVIS, J.—after stating the case: Exceptions to the findings of fact are sent up with the record, but as they present no questions subject to the review of this Court, we take no notice of them.

1. By section 1754 of *The Code*, when lands shall be rented or leased for agricultural purposes, unless otherwise agreed between the parties thereto, any crops raised on said lands "shall be deemed and held to be vested in possession of the lessor or his assigns at all times until the rents for said land shall be paid," etc. The lien thus provided for shall be preferred to all other liens, and no part of the crops can be removed before its satisfaction, either by the lessee or his assigns, without the consent of the lessor or his assigns. It is insisted for the defendants that the advancements, according to the facts found, were for the year 1884, and not for the year 1886; and constituted no lien upon the crops of that year, because, from the findings of fact, Hardy rented the plaintiff's land for the years 1885 and 1886 on the same terms as for the year 1884, and at the end of the years 1884 and 1885, all the cotton-seed, corn and fodder, being in bulk and undivided, the plaintiff settled her rent with Hardy, without having any particular part of the cotton-seed, corn and fodder set apart to herself to satisfy the advances, and not having the cotton-seed, corn and fodder in *actual* possession to advance to Hardy for another year upon the terms agreed, the alleged lien upon the crops of 1886 was for a pre-existing debt. We understand this to be the contention of the defendant's counsel. It is true the crop was in the possession of the plaintiff only by virtue

of the statute, but the cotton-seed, corn and fodder, though not divided and set apart from the bulk of the crop, were all deemed to be vested in possession of the plaintiff, and what was due to her being known in quantity and value, what necessity was there for measuring off so many bushels of cotton-seed and corn, in order to give effect to an agreement or contract of renting for the following year? *Cui bono* all that trouble? The contracts or agreements for 1885 and 1886, upon the facts found, were new and independent contracts or agreements, and there being enough cotton-seed, corn and fodder belonging to the plaintiff on her farm to pay for the advancements made, Hardy needing them to aid him in making a crop for the following year on said farm, it was competent for her to agree that he should have them for that purpose, and for Hardy to agree to take them for advancements, and that is a fair construction of the contract, as found by the referee. That the cotton-seed were to be returned in kind, or the value paid in money, made them none the less an advancement.

Did the plaintiff lose her lien because she did not have the cotton-seed, corn and fodder divided and set apart, take *actual* possession and make *actual* delivery to Hardy, as contended? The legal title to the crop and its possession were vested in her. Hardy's possession was her possession. He could neither dispose of it to another, nor keep and use it himself, without her consent, until he had discharged the lien, and when she consented and agreed that he might have it to aid him in making another crop on the land, by virtue of that agreement, the lien attached to the crop so to be made, as would any other advancement.

But the defendant's counsel says: "It cannot be said that Hardy agreed to receive it as an advancement, for the referee does not find this to be a fact; and, indeed, he could not so find, for there is no evidence that he ever did anything of the kind, but he positively refused to receive it as such."

We think this is a misapprehension of the finding of the referee. While he does not find, in so many words, that Hardy agreed to receive the cotton-seed, corn and fodder as an *advancement,* he does not find that Hardy *refused* to receive them as such; and while the findings of fact are not for our review, inasmuch as Hardy could not have removed, disposed of, or used the crop on which the plaintiff had a lien without first satisfying the lien or without her consent, and as he did use the cotton-seed, corn and fodder, he must have done so with her consent and the lien attached, or he would have subjected himself to an indictment, and we think the fair construction of the referee's findings is that they were advancements, and the defendant's first exception cannot be sustained.

2. We are unable to see any ground upon which the second exception can be maintained. The referee finds as a fact that 737 pounds of lint cotton on the rent of 1886 were unpaid, and they were certainly due.

3. The third exception is to the ruling that the defendant is liable to the plaintiff for the indebtedness of Hardy. Every person who makes advancements to a tenant or cropper of another does so with notice of the rights of the landlord, and that any lien that he may have on the tenant's crop is preferred to all others, and the risk is his if the tenant does not satisfy the preferred lien by complying with the contract and all stipulations in regard thereto. *Thigpen* v. *Leigh,* 93 N. C., 47.

The defendant having received of Hardy and appropriated to his own use more than enough of the crop upon which the plaintiff had a lien to pay the debt, he became liable therefor, and the third exception cannot be sustained.

4. If the defendant was liable to the plaintiff to the amount of the indebtedness of the tenant Hardy to the plaintiff, it

necessarily follows that the plaintiff was entitled to judgment therefor, and the fourth exception cannot be sustained.

There is no error, and the judgment of the Court below must be affirmed.

Affirmed.